**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEREMY MARCHEK, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, a Texas Corporation,

     Defendant.

_____

CASE NO.:

CLASS ACTION

Plaintiff Jeremy Marchek, ("Plaintiff") on behalf of himself and all others similarly situated, files this Class Action Complaint against Defendant United Services Automobile Association ("USAA" or "Defendant") and in support states:

**NATURE OF THE ACTION**

1. This is a class action lawsuit by Plaintiff, the named insured under Defendant's automobile policy issued for private passenger auto physical damage ("PPA") including comprehensive and collision coverage, which requires payment of, at minimum, "Actual Cash Value" or "ACV" in the event of a total-loss.

2. Upon information and belief, Defendant systematically underpaid not just Plaintiff, but thousands of other putative class members, amounts Defendant owed its insureds following the total loss of vehicles insured with comprehensive and collision coverage.

3. As a matter of uniform business practice, Defendant fails to include Michigan's sales tax rate of 6% (plus local sales tax of 0–3%) ("ACV Sales Tax") and Michigan title transfer and license plate fees ("Transfer Fees") in its calculation of ACV when making a total loss payment

1

to its insureds.

4.      In the Policy, Defendant's standardized policy language promises, upon the occurrence of a covered loss to an insured vehicle, to pay the cost to repair or replace the vehicle (or to directly repair or replace the vehicle).

5.      A "total loss" occurs where the cost to repair or replace the vehicle – the loss Defendant promises to pay – exceeds the pre-loss ACV of the insured vehicle (less salvage value). In such cases, Defendant's liability is limited to or capped at the pre-loss ACV, less the deductible and salvage, if applicable.

6.      Defendant's standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Michigan during the relevant time period.

7.      Sales tax is a mandatory element of the cost to repair or replace damage to a vehicle, including for Plaintiff's total-loss vehicle. If instead of paying the cost to repair or replace the loss to a vehicle, Defendant's liability is limited to the pre-loss ACV of the insured vehicle, such amount would also include sales tax. State law imposes a mandatory state sales tax of 6%. As such, the Policy includes sales tax (which is a mandatory cost to purchase a vehicle in Michigan) in the ACV total-loss coverage provided by Defendant, calculated as the applicable percentage of the adjusted vehicle value ("ACV Sales Tax").

8.      Nothing in the Policy conditions payment of sales tax on whether a vehicle is actually repaired or replaced and is thus incurred by the insured. Nothing in the Policy conditions payment of ACV on whether costs, including sales tax, is incurred by the insured.

9.      Title-transfer fees and registration fees are a mandatory part of replacement cost of every PPA vehicle insured by Defendant in Michigan, including for Plaintiff's total-loss vehicle.

State law imposes a minimum title transfer fees of $15.00, and minimum registration fees of $8.00 on each vehicle purchase or transfer of title and registration ("Transfer Fees"). As such, the Policy includes title-transfer fees and registration fees in the ACV total-loss coverage provided by Defendant.

10.    Nevertheless, Defendant failed to include ACV Sales Tax and/or Transfer Fees in making payment to each member of the Class defined below, thereby breaching its contract with every putative Class Member.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

12.    Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## PARTIES

13.    At all times material hereto, Plaintiff Marchek was a citizen of the State of Michigan and domiciled in Clinton County.

14.    At all times material hereto, Defendant is and was a foreign corporation located in the State of Texas, incorporated in Texas and with their principal place of business in Texas, and authorized to transact insurance in the State of Michigan.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

15.     Defendant's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by the Defendant in Michigan.

16.     Under the section entitled "PART D – PHYSICAL DAMAGE COVERAGE", the Policy promises to pay for collision and comprehensive loss. Ex. A at 20.

17.     Loss is defined as "direct and accidental damage to…or theft of your covered auto." Id. at 19.

18.     Loss is further defined to "not include any damage other than the cost to repair or replace." Id. The measure of loss – the "cost to repair or replace" – includes within it what Defendant terms a "total loss". Id.

19.     Defendant explains that the term "total loss" describes the scenario where, in Defendant's judgment, the amount of loss, which is the cost to repair or replace the damage to the insured vehicle, exceeds the vehicle's pre-loss ACV (less its salvage or retained value). Id. at 21.

20.     Thus, where "direct and accidental damage" to a vehicle occurs, Defendant promises to pay the cost to repair or replace the damage. Id. at 19. Defendant promises to pay for such damage either directly or by paying the cost in money. Id. at 22 (Payment of Loss provision). Repair and replacement costs includes sales tax.

21.     Defendant's liability to pay for such loss is not limitless, however. While promising to pay to repair or replace the damage to the vehicle, Defendant also caps its liability at the pre-loss ACV of the vehicle. Id. at 21 (Limit on Liability provision). Thus, although Defendant promises to pay to repair or replace the loss, if such amount is higher than the pre-loss ACV of the vehicle, Defendant is not obligated to pay the (higher) cost to repair or replace the loss. Instead,

4

the Policy permits Defendant to pay only the (lesser) ACV amount.

22.    Because a "total loss" is the term used to describe the situation where the cost to repair or replace the loss (the full amount of potential coverage) exceeds the pre-loss ACV (the limitation on the promise to pay), the Policy further explains that the amount owed in the context of such scenario is the lesser amount, *i.e*., ACV. Id.

23.    ACV is defined as "the amount that it would cost, at the time of loss, to buy a comparable vehicle. As applied to your covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." Id. at 19.

24.    The "cost…to buy a comparable vehicle" also includes sales tax and transfer fees. Defendant promised to pay the cost to repair or replace the loss, which includes sales tax and transfer fees. By limiting its liability to ACV, Defendant excluded the full repair or replacement amount, but it did not exclude sales tax and transfer fees, which would still be part of the cost to buy a comparable used vehicle.

25.    The Policy contains no language: (1) excluding sales tax or state and/or local regulatory fees; (2) conditioning payment of sales tax or state and/or local regulatory fees (or any other element) for any purpose whatsoever; (3) requiring an insured to obtain a replacement vehicle in order to receive payment; or (4) any provision linking the amount of sales tax or state and/or local regulatory fees (or any other element) on the amount (if any) actually spent by the insured on the total-loss vehicle or on any replacement vehicle.

26.    The Policy does not condition Defendant's payments of total-loss coverage on an insured's purchase of a replacement vehicle.

27.    The Policy does not permit Defendant to determine the *amount* of sales tax

coverage after purchase of a replacement vehicle (if any). Instead, the Policy promises ACV sales tax – sales tax based on a comparable vehicle, not some other vehicle an insured may or may not purchase. If an insured purchases a more expensive vehicle, the amount owed is not based on the more expensive vehicle; rather, the amount owed remains the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle. If an insured purchases a less expensive vehicle, the amount owed is not based on the less expensive vehicle; rather, the amount owed remains the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle. If the insured does not purchase a vehicle at all, the amount owed is the same, i.e., the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle.

28.     The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased.

<strong><u>Plaintiff Marchek's Total Loss Claim</u></strong>

29.     At all times material hereto, Plaintiff Marchek owned a 2019 Chevrolet Impala LT1 with VIN 2G11Z5S31K9152658 ("Insured Vehicle").

30.     At all times material hereto, Plaintiff insured the vehicle under a policy issued by Defendant USAA.  Plaintiff's policy is affixed hereto as <u>Exhibit A</u>.

31.     On or about September 18, 2019, Plaintiff's Insured Vehicle was involved in an accident.  As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 022459493–017.

32.     Following the filing of said claim, Defendant determined that the amount of loss – the cost to repair or replace the damage to the vehicle – exceeded the vehicle's ACV. As such, Defendant determined that the vehicle was a "total-loss." Plaintiff does not contest Defendant's determination of the loss amount, nor that such amount constituted a "total loss," nor that

Defendant invoked its ACV limitation on liability.

33.    Defendant determined that the Insured Vehicle was a total loss with a base value of $24,981.00. Plaintiff does not contest the calculation of the underlying base/adjusted value.

34.    The base value was calculated by a third-party vendor ("CCC"), which bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage, and which produced the CCC Market Valuation Report, attached hereto as Exhibit B.

35.    CCC then added $1,498.86 for the applicable 6% sales tax and concluded that the total was $26,479.86. See id.

36.    No amount for the Transfer Fees was included in the amount listed in the CCC Market Valuation Report. See id.

37.    Notably, the CCC Market Valuation Report stated that, "The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account." Id.

38.    Defendant used the Base Value of $24,981.00, *removed* the sales tax included in the CCC report, and subtracted the deductible of $100.00 for a net total payment of $24,881.00. A copy of the Settlement Statement is attached hereto as Exhibit C.

39.    Defendant's payment did not include ACV Sales Tax or Transfer Fees.

40.    The failure to include ACV Sales Tax and/or Transfer Fees in making the total loss payment to Plaintiff is a breach of the Insurance Policy.

41.    ACV Sales Tax and Transfer Fees are mandatory applicable costs that must be paid to purchase any vehicle in the State of Michigan.

42.    Michigan law requires that all vehicles be properly titled and registered to be legally driven on Michigan roadways. The fee to transfer title to a vehicle is, at minimum, $15.00.

43.     Michigan law requires that all vehicles have proper license plate (or tag) to be legally driven on Michigan roadways. The fee to transfer license plate or tag is no less than $8.00.

44.     Michigan law prescribes that all vehicles are subject to sales tax of 6%.

45.     Plaintiff was owed, at minimum (a) title transfer fees of $15.00, plus (b) tag transfer fees of $8.00, plus (c) $1,498.86[1] in ACV Sales Tax.

46.     In breach of its contract with Plaintiff, Defendant did not include ACV Sales Tax and/or Transfer Fees in making the ACV payment for Plaintiff's total loss.

47.     In doing so, Defendant underpaid Plaintiff the amount of the mandatory cost to purchase a comparable vehicle, thereby violating the Insurance Policy.

48.     Plaintiff and all members of the putative class paid all premiums owed and otherwise satisfied all conditions precedent, or such conditions precedent were waived or excused.

## CLASS ALLEGATIONS

49.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

50.     Plaintiff seeks to represent on a class-wide basis all persons similarly situated, the class ("Class") defined as follows:

> All insureds, under any Michigan policy issued by United Services Automobile Association covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who submitted a first-party claim determined by Defendant to be a covered total-loss claim, within the applicable statute of limitations period until the date of class certification, where Defendant did not include ACV Sales Tax and/or Transfer Fees as part of the total-loss claim payment.

---

[1] This amount represents 6% of the Adjusted Vehicle Value of $24,981.00. See Exhibit B. Plaintiff does not contest Defendant's valuation of the amount of loss for the Insured Vehicle, only Plaintiff's entitlement to ACV, which includes the payment of Sales Tax and Transfer Fees, which Plaintiff was not paid.

51.    Excluded from the Class are Defendant, its subsidiaries and affiliates, its officers, directors, and member of their immediate families, any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

52.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary and allowed by law.

### A.  Numerosity

53.    Although the precise number of Class members are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is of the largest motor vehicle insurers in the State of Michigan, the Class of persons affected by Defendant's unlawful practices consists of thousands of individuals such that joinder of all Class members is impractical. The Class definition will permit the court to reasonably ascertain whether any individual or entity is a member of the Class because it is based on objective factual issues, readily available and accessible through, *inter alia*, Defendant's own business records, and does not depend on subjective criteria just as state of mind.

### B.  Commonality

54.    There are questions of law and fact common to the Class that are subject to a common resolution – namely, whether Defendant's form policy language requires payment of ACV Sales Tax and/or Transfer Fees in the event of a total loss.

55.    Plaintiff satisfies the commonality requirement because the claims arise from a practice which Defendant's apply uniformly to all Class members and are based on the same legal theories, i.e., that failing to pay ACV Sales Tax and/or Transfer Fees in total loss cases violates the uniform insurance policies. Because the relevant Policy language is the same as to all Class

Members and Defendant's conduct is uniform as to all Class Members, the material elements of the class claims are subject to common proof. The common questions include, but are not limited to, the following: (a) whether Defendant's standardized policy language requires payment of ACV Sales Tax and/or Transfer Fees upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the Class Members by failing to pay ACV Sales Tax and/or Transfer Fees upon the total loss of an insured vehicle.

### C.  <u>Typicality</u>

56.     Plaintiff's claims are typical of the claims of all other members of the Class because all such claims arise from the Defendant's failure to pay ACV Sales Tax and/or Transfer Fees on total loss claims of insured vehicles. Plaintiff alleges the same injury based on the same legal theories as the Class, and Plaintiff is not subject to any unique affirmative defenses precluding class treatment.

57.     Plaintiff's and Class members' legal claims arise from the same core practices, namely, the failure to pay ACV Sales Tax and/or Transfer Fees for first-party total loss claims. The material facts underlying the claims of each putative Class member are the same material facts as those supporting the Plaintiff's claims alleged herein and require proof of the same material facts.

### D.  <u>Adequacy</u>

58.     Plaintiff can and will adequately represent the putative Class and his interests are common to, and coincident with, those of all absent Class members. By proving his individual claims, Plaintiff will necessarily prove the claims of the putative Class and prove Defendant's liability to the Class. Plaintiff has no known conflicts of interest with any members of the Class; his interests and claims are not antagonistic to those of any other Class members.

59.    The representative Plaintiff therefore can and will fairly and adequately protect and represent the interests of the Class.

60.    Normand PLLC, Edelsberg Law P.A., Shamis & Gentile, P.A., and Dapeer Law, P.A., Plaintiff's counsel, have extensive experience in complex commercial litigation, class actions, and have adequate financial resources to ensure that the interests of the Class will not be harmed.

61.    If appointed Class representative, Plaintiff is aware of, and is committed to, faithfully upholding his fiduciary duties to absent Class members. Plaintiff and his counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the Class is fairly represented.

### E.  Predominance and Superiority

62.    A class action provides a fair and efficient method for the adjudication of this controversy. Class treatment is a superior form of adjudication to the prosecution of individual claims, and provides a substantial benefit to the court and litigants by avoiding a multiplicity of suits and the risk of inconsistent results.

63.    Because Defendant's conduct was uniform with respect to prospective Class members, common questions of law and fact predominate over individual questions. Resolution of the singular issues concerning contract interpretation will resolve virtually the entirety of all Class Member claims in a single stroke.

64.    Because the Class encompasses many thousands of claims (if not tens of thousands of claims), a single, state-wide class action is plainly more efficient than many thousands of individual lawsuits, each requiring the same discovery and proofs. Given the relatively small amount of the claim(s) of each putative Class member, it is likely that absent class representation,

11

such claims would not be brought, and the Class would never have appropriate redress for Defendant's improper conduct. A class action is superior and more efficient to other available methods for the fair and efficient adjudication of this controversy.

65.    Class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

66.    In addition, the expense and burden of individual litigation effectively makes it a practical impossibility for individual Class members to seek redress for the wrongs alleged herein.

67.    The advantages of maintaining this action as a class suit far outweigh the expense and waste of judicial effort that would result from thousands of separate adjudications or the unfairness of none at all, which is the likely outcome if the small individual claims at issue are not aggregated as a Class.

68.    There are also no unusual difficulties likely to be encountered in the maintenance of this action as a class suit, and this Court can effectively manage the class action.

69.    The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because Defendant keep records of insurance policies and claims of prospective Class members during the class period, including records of total loss vehicles. Therefore, both the membership of the Class and the amount of individual damages is readily ascertainable from Defendant's records.

## F.  Declaratory Relief Under Rule 23

70.    Class treatment is warranted because Defendant has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final declaratory

relief concerning the Class as a whole appropriate.

71.     Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

72.     Because Defendant has acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

73.     Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

74.     Plaintiff has retained the undersigned counsel and has agreed to pay reasonable attorney's fees and costs.

## COUNT I
## BREACH OF CONTRACT

75.     The allegations in paragraph 1 through 74 are hereby incorporated by reference.

76.     This count is brought by Plaintiff on behalf of himself and on behalf of all members of the Class.

77.     Plaintiff was a party to a form contract, the Insurance Policy, with Defendant as described herein.  See Exhibit A.  All members of the Class are or were parties to an Insurance Policy contract with Defendant containing materially identical terms.

78.     Michigan law governs the interpretation and construction of insurance policies of Plaintiff and all members of the Class with Defendant.

79.     Plaintiff and all members of the Class made claims determined by Defendant to be

first party total losses under the Insurance Policy and determined by Defendant to be covered claims.

80.     Defendant, in paying the total loss claims, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the insurance policies necessary to be paid on the total loss.

81.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class member were owed ACV Sales Tax.

82.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class member were owed Transfer Fees.

83.     Defendant breached that obligation by failing to include ACV Sales Tax and/or Transfer Fees in the ACV payment.

84.     Defendant's failure to provide the promised coverage constitutes a material breach of contracts with Plaintiff and every Class member.

85.     As a result of said breaches, Plaintiff and the Class members have been damaged and are entitled under Defendant's insurance policies to sums representing the benefits owed for ACV Sales Tax and/or Transfer Fees, as well as prejudgment and post-judgment interest, and other relief as is appropriate.

**COUNT II**
**DECLARATORY RELIEF**

86.     The allegations in paragraph 1 through 74 are hereby incorporated by reference.

87.     This count seeks declaratory relief pursuant to Federal Rule of Civil Procedure Rule 23.

88.     This count is brought by Plaintiff on behalf of himself and all members of the Class.

89.     Plaintiff was a party to a form contract, the Insurance Policy, with Defendant as

14

described herein.  See Exhibit A.  All members of the Class are or were parties to an Insurance Policy contract with Defendant containing materially identical terms.

90.    Michigan law governs the interpretation and construction of Plaintiff and all Class members' insurance policies with Defendant.

91.    Plaintiff seeks a declaratory judgment that an insured is entitled to ACV Sales Tax and Transfer Fees as part of the total loss payment under the insurance policies that govern Plaintiff's and the Class members' contractual relationships with Defendant.

92.    Plaintiff contends Defendant is required to pay ACV Sales Tax and Transfer Fees under the insurance policies that govern Plaintiff and the Class members relationship with Defendant.

93.    Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

94.    Because of Defendant's claim to the contrary, Plaintiff is in doubt as to his rights under the Insurance Policy.

95.    The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to entitlement to the ACV Sales Tax and Transfer Fees.

96.    The above allegations reflect that Plaintiff has presented a justiciable question as to the existence of rights to the ACV Sales Tax and Transfer Fees.

97.    All antagonistic and adverse interests, namely Plaintiff and Defendant and the Class when certified, are before this Court by the filing of this count.

98.    Pursuant to Rule 23, Plaintiff is entitled to a declaration of his right to ACV Sales Tax and Transfer Fees to resolve their doubt about rights under the Insurance Policy considering the Defendant's position otherwise.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff, on behalf of himself and all others similarly situated, demand a trial by jury on all triable issues and seeks relief and judgment as follows:

1.      For an Order certifying this action as a Class Action on behalf of the Class described above;

2.      For an award of compensatory damages for the Class in amounts owed under the Policies;

3.      For declaratory relief to be entered for Plaintiff and the Class that their interpretation of the Insurance Policy is correct, thereby requiring Defendant to pay ACV Sales Tax and Transfer Fees;

4.      For all other damages according to proof;

5.      For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

6.      For costs of suit incurred herein;

7.      For pre and post judgment interest on any amounts awarded;

8.      For other and further forms of relief as this Court deems just and proper.


Dated:  January 27, 2021

Respectfully submitted,

*/s/ Andrew Shamis*
**SHAMIS & GENTILE, P.A.**
Andrew Shamis
ashamis@shamisgentile.com
14 N.E 1st Ave Ste. 705
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg (*pro hac vice* to be filed)
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

**DAPEER LAW, P.A.**
Rachel Dapeer (*pro hac vice* to be filed)
rachel@dapeer.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-610-5223

**NORMAND PLLC**
Amy Judkins *(pro hac vice to be filed)*
Jacob Phillips *(pro hac vice to be filed)*
Post Office Box 1400036
Orlando, FL 32814-0036
Telephone: (407) 603-6031
ed@ednormand.com
jacob.phillips@normandpllc.com

*Counsel for Plaintiff and Putative Class*